UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 PROCEEDING |
| | ) | |
| CHARLES V. COOK, SR., | ) | CASE NO. 14 B 36424 |
| | ) | |
| DEBTOR. | ) | HONORABLE LASHONDA A. HUNT |

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on **Wednesday, April 4, 2018, at 10:00 a.m.**, I shall appear before the Honorable LaShonda A. Hunt, Bankruptcy Judge, in Courtroom 719, Dirksen Federal Courthouse, 219 S. Dearborn, Chicago, Illinois, or before any other Bankruptcy Judge who may be sitting in her place and present the **UNITED STATES TRUSTEE'S MOTION TO EXAMINE FEES OF DEBTOR'S ATTORNEY AND MOTION TO DISQUALIFY DAVID GALLAGHER AND LAW SOLUTIONS CHICAGO, LLC d/b/a UPRIGHT LAW**, a copy of which is attached and is served on you.

/s/ Jeffrey S. Snell
Jeffrey S. Snell, Trial Attorney
United States Department of Justice
Office of the United States Trustee
219 South Dearborn Street, Room 873
Chicago, Illinois 60604
Telephone: (312) 886-0890
Fax: (312) 886-5794
Email: Jeffrey.Snell@usdoj.gov

# CERTIFICATE OF SERVICE

      I, Jeffrey S. Snell, state that pursuant to Local Rule 9013-1(D) the above **Notice of Motion** and the appended **UNITED STATES TRUSTEE'S MOTION TO EXAMINE FEES OF DEBTOR'S ATTORNEY AND MOTION TO DISQUALIFY DAVID GALLAGHER AND LAW SOLUTIONS CHICAGO, LLC d/b/a UPRIGHT LAW** were filed on March 21, 2018, and served on all parties identified as Registrants on the service list below through the Court's Electronic Notice for Registrants, and served on all other identified parties in the manner indicated.

                                                                        /s/ Jeffrey S. Snell

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice For Registrants**

- Deborah J Baker    dbaker@uprightlaw.com
- Ira Bodenstein    iratrustee@shawfishman.com, IL29@ecfcbis.com;plove@shawfishman.com
- David Gallagher    dgallagher@uprightlaw.com, dgallagher@lawsolutionsbk.com,notices@lawsolutionsbk.com
- David Michael Menditto    dmenditto@uprightlaw.com
- James Leighton O'Connell-Miller    loconnell-miller@uprightlaw.com, notices@uprightlaw.com

**Parties Served by USPS First Class:**

Charles V. Cook, Sr.
19821 Monterey Avenue
Lynwood, IL 60411

Nissan Motor Acceptance Corporation
PO BOX 660366
Dallas, TX 75266

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 PROCEEDING |
| | ) | |
| CHARLES V. COOK, SR., | ) | CASE NO. 14 B 36424 |
| | ) | |
| DEBTOR. | ) | HONORABLE LASHONDA A. HUNT |

**UNITED STATES TRUSTEE'S MOTION TO EXAMINE FEES OF DEBTOR'S ATTORNEY AND MOTION TO DISQUALIFY DAVID GALLAGHER AND LAW SOLUTIONS CHICAGO, LLC d/b/a UPRIGHT LAW**

NOW COMES PATRICK S. LAYNG, the United States Trustee for Region 11 (the "U.S. Trustee"), by and through his attorneys, Jeffrey S. Snell and Ha M. Nguyen, and respectfully moves this Court to examine the fees paid by or on behalf of Charles V. Cook, Sr. to David Gallagher and Law Solutions Chicago, LLC d/b/a/ Upright Law pursuant to 11 U.S.C. §§ 105 and 329 and to enter an order: (1) directing all fees be refunded to Mr. Cook, (2) cancelling the retention agreement to the extent it is not already void, (3) disqualifying Mr. Gallagher and Upright Law from representing Mr. Cook as a witness in connection with the Motion for Sanctions presently pending against them in his bankruptcy case, and (4) for any other and further relief as is just. In support of this motion, the U.S. Trustee states to the Court as follows:

1. Mr. Cook's bankruptcy case has involved a number of troubling occurrences. Mr. Gallagher and/or his colleagues at Upright Law have been participants in each, from filing the original inaccurate Schedule B and Statement of Financial Affairs, to causing factually inaccurate testimony at the meeting of creditors, to filing an inaccurate amended Schedule B, to the unauthorized conversion of property of this bankruptcy estate. On June 26, 2017, the U.S. Trustee filed his Motion for Sanctions Against Gallagher, Kevin Chern, Jason Allen, and Upright Law (collectively, the "Respondents") highlighting many of the troubling facts in this case. Respondents' reactions to the Motion for Sanctions have been aggressive, but not corrective. Mr.

Gallagher and Upright Law now intend to serve as Mr. Cook's counsel *in the action against them*, representing him as a witness and advising him as to *his* attorney-client privilege.

## JURISDICTION

2.  This is a core proceeding concerning the administration of the estate under 28 U.S.C. § 157(b)(2)(A) which this Court may hear and determine under Internal Operating Procedure 15(a) and Local Rule 40.3.1(a) of the United States District Court for the Northern District of Illinois.

3.  The U.S. Trustee has standing to bring this motion under 11 U.S.C. § 307.

## BACKGROUND

4.  June 6, 2014, Mr. Cook commenced *Charles Cook v. Rushmore Service Center, LLC*, Case No. 14-cv-04180 (hereinafter, "*Cook v. Rushmore*"). The complaint was filed by Upright Law attorney David P. Leibowitz. In or around August of 2014, defendant Rushmore Service Center, LLC paid $3,500 to settle the suit (the "Rushmore Settlement"). Respondents have represented to the U.S. Trustee that the Rushmore Settlement was divided as follows: $1,000 to Mr. Cook, $400 for costs, and $2,100 to Upright Law for attorney fees.

5.  On June 30, 2014, Mr. Cook commenced *Charles Cook v. Praxis Financial Solutions, Inc.*, Case No. 14-cv-04916 (hereinafter, "*Cook v. Praxis*"). The complaint was filed by David B. Levin, an attorney then practicing with Upright Law.

6.  On October 7, 2014, Mr. Cook commenced the instant Chapter 7 bankruptcy case with the filing of his voluntary petition. Accompanying his petition, Mr. Cook filed sworn Schedules A-J and a Statement of Financial Affairs ("SOFA"). Mr. Gallagher, an employee of Upright Law, signed the petition and filed the documents, and has remained Mr. Cook's counsel of record throughout the bankruptcy case.

7. *Cook v. Praxis* was pending on the date the bankruptcy petition was filed, and the claim became property of the bankruptcy estate under 11 U.S.C. § 541. Mr. Cook failed to disclose the claim on Line 21 of Schedule B, which required disclosure of contingent and unliquidated claims of any nature. Mr. Cook also failed to disclose the existing retention agreement between himself and Upright Law to pursue Fair Debt Collection Practices Act ("FDCPA") claims on Schedule G.

8. Mr. Cook failed in his SOFA to disclose:

   a. The $1,000 obtained from *Cook v. Praxis* in response to Question 2, which required disclosure of income other than from employment or operation of business within the two years preceding the bankruptcy filing.

   b. The existence of *Cook v. Rushmore* and *Cook v. Praxis* in response to Question 4, which required disclosure of all suits and administrative proceedings to which Mr. Cook was a party within the year preceding the bankruptcy filing.

   c. The transfer of $2,100 to Upright Law from the Rushmore Settlement was not disclosed in response to Question 10, which required disclosure of all transfers of property not made in the ordinary course of Mr. Cook's financial affairs within the two years preceding the bankruptcy filing that were not otherwise disclosed in the SOFA.

9. On October 20, 2014, Mr. Cook, through Mr. Levin of Upright Law, filed a motion for default judgment in *Cook v. Praxis*. On October 23, 2014, the motion was granted, and a prove-up hearing was scheduled. On November 20, 2014, the prove-up hearing was held, and the following entry was made on the public docket:

> MINUTE entry before the Honorable Samuel Der-Yeghiayan: Prove-up hearing held. Plaintiff's request for default judgment in sum certain is granted. Judgment is hereby entered in favor of Plaintiff and against Defendant in the total amount of $5,132.50.

Counsel for Plaintiff to provide the Court with a proposed draft judgment order consistent with this Court's ruling. Mailed notice (mw,) (Entered: 11/20/2014)

10. On November 21, 2014, Mr. Cook appeared for the meeting of creditors held pursuant to 11 U.S.C. § 341 (the "341 Meeting") in this bankruptcy case. During the 341 Meeting, the following exchange occurred:

| | |
|---|---|
| TRUSTEE: | Okay. Anybody owe you money? |
| MR. COOK: | No. Who owes me money? |
| TRUSTEE: | Does anybody owe you money? |
| MS. WOOD: | We actually have a possible FDCPA claim -- |
| MR. COOK: | Oh, possible. |
| MS. WOOD: | -- that we will be amending when we get back. |
| TRUSTEE: | Fair Debt Collection Practices Act. Okay. And you bring those yourself, your firm? |
| MS. WOOD: | Yeah, the firm does, yep. |
| TRUSTEE: | Okay. |

(A copy of the 341 Meeting transcript is attached as Exhibit 2 to the Motion for Sanctions.)

11. On November 24, 2014, the Chapter 7 Trustee filed his Report of No Distribution.

12. On November 24, 2014, after the Report of No Distribution was filed, amended Schedules B and C were filed. In his amended Schedule B, Mr. Cook disclosed an "FDCPA Settlement" with a value of $1,000 on Line 21, and in his amended Schedule C, he claimed this "FDCPA Settlement" as exempt.

13. On December 1, 2014, a judgment order was entered in *Cook v. Praxis* in favor of Mr. Cook in the amount of $5,132.50 (the "Praxis Judgment"). The Praxis Judgment was comprised of $1,000 in actual damages, $1,000 in statutory damages, $2,672.50 for attorneys' fees, and $460 for costs.

14. On or around December 15, 2014, Mr. Levin of Upright Law settled the Praxis Judgment with Praxis for $3,600. (*See* Exhibit A.) According to Respondents' counsel, that sum

4

was divided as follows: $1,402.80 to Mr. Cook, $460 for costs, and $1,737.20 to Upright Law for attorneys' fees.

15. On January 21, 2015, Mr. Cook received a Chapter 7 discharge. On January 26, 2015, his bankruptcy case was closed.

16. On June 23, 2017, the bankruptcy case was reopened, and on June 26, 2017, the U.S. Trustee filed his Motion for Sanctions.

17. In the nearly nine months that have elapsed since the reopening of this bankruptcy case, there has been no correction of the indisputable inaccuracies in Mr. Cook's sworn bankruptcy disclosures.

i. The March 12, 2018 Deposition of David Gallagher

18. On March 12, 2018, the U.S. Trustee conducted a deposition of Mr. Gallagher, the transcript of which is attached as Exhibit B. During the deposition, Mr. Gallagher testified that he does not know Mr. Cook personally, that he has met him by Skype or in person previously but cannot remember exactly how, and that he does not know whether he has met Mr. Cook more than once. (Exhibit B at 17:8-17.) Mr. Gallagher also appears to have acknowledged in his testimony certain obligations on the part of a debtor's counsel:

> Q. If an attorney comes to learn that documents the attorney filed with the Court contain inaccuracies, do you believe that attorney has any obligations?
>
> MR. O'CONNELL-MILLER: I am going to object to form, but go ahead.
>
> A. I believe if it becomes, we can amend it, yes, and we should amend it.

(Id. at 28:21-29:4.) Mr. Gallagher testified that he has never looked at either the First Amended Complaint or the case docket of *Cook v. Rushmore*. (Id. at 39:16-40:4.) Similarly, he testified that prior to the deposition he had not ever reviewed the judgment order in *Cook v. Praxis*. (Id. at 44:15-21.) Mr. Gallagher testified that he had never seen the Attorney Representation Agreement and Limited Power of Attorney between Law Solutions Chicago/Jason Allen Law and Charles Cook

5

that related to FDCPA representation (hereinafter, the "FDCPA Retention Agreement"), a document signed by Mr. Cook and dated January 16, 2014. (Id. at 42:14-43:14.)

19. During the deposition, Mr. Gallagher was questioned about the "FDCPA Settlement" identified on the Amended Schedules B and C. He testified that he had prepared the documents and reviewed them with Mr. Cook (Exhibit B at 46:14-20), but he was not able to provide a clear answer as exactly what the referenced "FDCPA Settlement" was. (*See* id. at 49:10-52:4.)

> Q. So, Mr. Gallagher, as you sit here today, do you believe line 21 on [the Amended Schedule B] is accurate?
>
> A. At the time it was filed, based on my knowledge and what I had, I believe it was accurate then to what I knew and what was available to me.
>
> Q. If I understand correct, you actually have no recollection of that, right?
>
> A. I can't remember specifically.
>
> Q. So my question is sitting here today, do you believe line 21 on this Amended Schedule B is accurate?
>
> A. I believe it should be amended.
>
> Q. When did you reach that conclusion?
>
> A. When I found out this information, based on your motion for sanctions and all this -- this recent documents provided and all that.
>
> MR. O'CONNELL-MILLER: My understanding, if it's helpful for the record, is that an amendment will be filed by the end of the week.

(Id. at 51:21-52:18.)[1] Mr. Gallagher went on in his testimony to acknowledge that Mr. Cook's SOFA contains inaccurate information with respect to Questions 2 and 4. (Id. at 53:7-54:10). When questioned as to whether the FDCPA Retention Agreement is an executory contract that is required to be disclosed on Schedule G, Mr. Gallagher's testimony indicated a lack of understanding as to what an executory contract is. (*See* Id. at 56:19-57:24.) Mr. Gallagher testified that he does not

---

[1] As of the filing of this motion, no amendments have been made to the Schedules and SOFA in Mr. Cook's bankruptcy case, aside from the initial amended Schedules B and C filed by Mr. Gallagher on November 24, 2014.

6

know what authority Mr. Levin had to settle *Cook v. Praxis* while the bankruptcy case was pending. (Id. at 59:2-4.) Mr. Gallagher testified that he had not "ever seen" the transcript of the 341 Meeting (Id. at 59:24.), the document that is Exhibit 2 to the Motion for Sanctions. When asked whether he believed the description of a "possible FDCPA claim" provided at the 341 Meeting was an accurate description of *Cook v. Praxis* as of that date, Mr. Gallagher indicated that it "possibly" was accurate or "could be."

> Q. And so Cook versus Praxis, that's the one where we looked at the docket that is Exhibit 6, and there's that minute entry November 20, right?
>
> A. There is.
>
> Q. And the minute entry says the judgment is going to be entered in favor of the plaintiff, right?
>
> A. That is what it says.
>
> Q. So you think that this [*Cook v. Praxis*] is the case that Ms. Wood was describing the next day on November 21 when she said possible FDCPA claim?
>
> MR. O'CONNELL-MILLER: I am going to object to form, but go ahead.
>
> A. I have no clue what Ms. Wood is referring to. I'm not Ms. Wood.
>
> BY MR. SNELL:
> Q. Well, do you think that a possible FDCPA claim would accurately describe Cook versus Praxis on November 21, 2014?
>
> A. Possibly.
>
> Q. You think it's possibly accurate; is that what you're saying?
>
> A. For what Ms. Wood said, I don't know what Ms. Wood was referring to exactly as I'm not Ms. Wood.
>
> Q. Right, and my question -- I might have misstated it. I apologize. My question is do you believe the description possible FDCPA claim is an accurate description of --
>
> MR. O'CONNELL-MILLER: Again for the record I'm going to object to form, but go ahead.
>
> BY MR. SNELL:
> Q. -- of Cook versus Praxis --
>
> A. It could --
>
> Q. -- as of November 21, 2014?

7

    A.    It could be.

(Id. at 64:6-65:19.) Mr. Gallagher testified that he had not had any conversations with Mr. Cook about conflicts of interest. (Id. at 108:16-109:1.)

    ii. The Purported Conflict of Interest Waiver

    20.    At least as far back as a January 28, 2018, discovery conference, the U.S. Trustee expressed concern to Respondents about Mr. Gallagher or any other attorney from Upright Law representing Mr. Cook as a witness in this matter. Their interests were simply too misaligned. Mr. Cook's interests include the efficient and proper resolution of the issues arising in his bankruptcy case, including the correction of inaccurate disclosures and potential redress against Mr. Gallagher and Upright Law for the legal services provided. Respondents' interests include avoiding financial and professional consequences for their actions. Through representing Mr. Cook as a witness in this proceeding, Mr. Gallagher and Upright Law would be in a position to further their interests, at the direct expense of his. The U.S. Trustee's concerns about conflicts of interest were heightened in mid-February, when the decision in *In re Williams*, No. 15-71767, 2018 WL 832894, at *16 (Bankr. W.D. Va. Feb. 12, 2018), was issued, finding, among other things, that one of Upright Law's in-house attorneys "used heavy handed tactics… to try and get the Williamses to sign conflict waivers…", id. at *16, and concluding that the Upright Law attorney was "clearly [attempting] to lobby [Mr. Williams] to sign the conflict waiver so he could assert the attorney-client privilege on their behalf and attempt to shield their files and Upright's from discovery." *Id.* at *17.[2]

---

[2] The in-house Upright Law attorney whose conduct was at issue in *Williams* is David Menditto, one of Respondents' counsels of record here.

8

21. After Leighton O'Connell-Miller entered his appearance in this matter, the U.S. Trustee's counsel shared with him the concerns regarding conflicts of interest in an email sent February 27, 2018,[3] observing:

> With respect to Mr. Cook, it is our understanding from your colleague, Mr. Menditto, that it is contemplated that an employee of Law Solutions Chicago will represent him (Mr. Cook) at a deposition. In light of the fact that any employee of Law Solutions Chicago would appear to have interests materially adverse to Mr. Cook as a result of their ongoing employment, we would respectfully submit that your employer consider promptly refunding all fees collected from Mr. Cook so that he can hire new counsel. As you know, Mr. Cook's original bankruptcy schedules and Statement of Financial Affairs omitted the FDCPA lawsuits, and Mr. Cook's amended bankruptcy Schedules B and C provided only limited and inaccurate information regarding one of the two lawsuits. In these circumstances, it would seem difficult for any of your coworkers to represent only the interests of Mr. Cook, irrespective of the consequences to Law Solutions Chicago and Messrs. Chern and Allen.

This concern was further discussed with Mr. O'Connell-Miller during a meeting on March 12, 2018. During that meeting, and again by email on March 14, 2018, Mr. O'Connell-Miller informed that he "do[es] not see a conflict at all" with Mr. Cook being represented by Mr. Gallagher and Upright Law. (*See* Exhibit C, p. 4.) Mr. O'Connell-Miller then went on to announce that he would cause an Upright Law attorney to contact Mr. Cook to discuss "any asserted conflict" and a waiver of same. (Id.) The U.S. Trustee's counsel suggested that the matter be brought before the Court to be addressed in the open, and requested that Mr. O'Connell-Miller refrain from making representations to third party witnesses about the U.S. Trustee's position. (Id., p. 5.) This communication was apparently misunderstood and misconstrued by Mr. O'Connell-Miller, and, two days later, on March 16, 2018, he provided a document signed by Mr. Cook that purports to be a conflict waiver. (Id., p. 2; Exhibit D.)

22. It is not clear *who* explained *what* to Mr. Cook about the conflicts of interest that exist between himself and the Respondents. What is clear is that the ramifications of Mr.

---

[3] This email was attached by Mr. O-Connell-Miller as Exhibit B to his Motion for Protective Order. (*See* Dkt. No. 47-2.)

9

Gallagher's and Upright Law's actions in his bankruptcy case are continuing to reverberate in Mr. Cook's life. On March 19, 2018, Mr. O'Connell-Miller advised the U.S. Trustee:

> I learned today that Mr. Cook has been denied refinancing on his home three times now because his bankruptcy case is still open. He is not currently in foreclosure but that may be a risk down the road. I am requesting that the U.S. Trustee refile the motion as an adversary proceeding and then close Mr. Cook's case. My clients will have no objection to the adversary proceeding simply because the case is closed in line with *Harrington v. McKenna (In re Sanchez)*, 557 B.R. 264, 266-67 (Bankr. D.R.I. 2016). However, that will allow Mr. Cook to be able to complete the refinancing of his home, which has been causing him considerable stress from my conversation with David Gallagher. This process could be structured to avoid any disruption to the current discovery schedule. The motivation here is allowing Mr. Cook to complete his refinancing.

(*See* Exhibit C.)[4] It is remarkable that Respondents claim blindness to the conflict that exists between themselves and Mr. Cook, when it is their actions and omissions in his bankruptcy case that are the direct and proximate cause of his current situation. It is stunning that three days after obtaining *what they purport to be an informed conflict waiver*, Respondents first come to learn of the ongoing impact to their client of their past actions.

## A. THE LEGAL FEES PAID BY MR. COOK SUBSTANTIALLY EXCEED THE VALUE OF THE LEGAL SERVICES HE RECEIVED, AND THE SUMS PAID SHOULD BE ORDERED DISGORGED

23. Section 329(b) of the Bankruptcy Code authorizes this Court to examine the fees paid to an attorney in connection with a bankruptcy case and provides that, to the extent the amounts paid exceed the reasonable value of the services rendered, this Court can cancel any agreement between the debtor and counsel and order the return of any excessive payment. It is the attorney's burden to establish the reasonableness of the fee collected. *In re Geraci*, 138 F.3d 314,

---

[4] Despite the exigency expressed by Mr. O'Connell-Miller in his email, this is not a new issue. David Gallagher filed a Motion to Approve Refinance on September 20, 2017, seeking the Court's approval of a proposed refinancing transaction. (*See* Dkt. No. 38.) This motion was denied as unnecessary. *It does not appear that any further action was taken by Mr. Gallagher or Upright Law*, until Mr. O'Connell-Miller's request of March 20, 2018. It is not clear to the U.S. Trustee that the problem is the status of the bankruptcy case, as opposed to the status of the real property. It may be that an order confirming or compelling abandonment under 11 U.S.C. § 554 will resolve the issue.

10

318 (7th Cir. 1998) ("Once a question has been raised about the reasonableness of the attorney's fee under section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable.")

24. In examining the reasonableness of a fee under § 329, the accuracy of the documents prepared for a debtor is certainly relevant. In *In re OhPark*, 2010 Bankr. LEXIS 1580, 63 Collier Bankr. Cas. 2d (MB) 1470 (Bankr. E.D. Va. 2010), Bankruptcy Judge Stephen S. Mitchell noted:

> "where the petition and schedules filed on behalf of the debtor contain discrepancies, omissions, and inaccuracies, fee disgorgement is appropriate under § 329." *In re De Molina*, No. 09-14158, 2009 Bankr. LEXIS 4126 (Bankr. E.D. Va. Dec. 15, 2009) (citing *In re Nickerson*, No. 08-35234, 2009 Bankr. LEXIS 1433, 2009 WL 1587160 (Bankr. N.D. Ohio, April 16, 2009)). This is true whether the mistakes in the documents were intentional or inadvertent, although the amount of fees to be disgorged will obviously vary depending on the seriousness of the omission or error and the efforts made by the attorney to verify the accuracy of the documents.

*In re OhPark* at *6-7.

25. In this case, the inaccuracies and omissions in Mr. Cook's bankruptcy Schedule B and SOFA are serious, and Mr. Gallagher and Upright Law were the substantial cause of these inaccuracies. Respondents' conduct in this case is what has required the case to be reopened, at apparently significant detriment to Mr. Cook. While the complete retention agreement has not been filed,[5] Mr. Cook surely did not retain Upright Law to prepare inaccurate disclosures on his behalf and convert property of the bankruptcy estate through an unauthorized settlement, and yet, that is what happened.

---

[5] One page of the retention agreement was filed with the petition. (*See* Exhibit E.) This document is signed by Mr. Cook, but not by any attorney or other representative of Upright Law. This agreement is not an *executed* contract as required under the explicit terms of 11 U.S.C. § 528(a). Accordingly, the agreement is void under 11 U.S.C. § 526(c)(1).

11

26. Upright Law reports receiving $1,575 for their services in this bankruptcy case. Given the nature and circumstances of the inaccuracies in Mr. Cook's Schedules and SOFA, the U.S. Trustee submits that the funds collected by Upright Law for this bankruptcy case should be ordered disgorged to Mr. Cook and the retention agreement cancelled in the event it is not already void pursuant to 11 U.S.C. §§ 526(c)(1) and 526(a).

**B. DAVID GALLAGHER AND UPRIGHT LAW HAVE CONFLICTS OF INTEREST WITH MR. COOK THAT ARE NOT SUSCEPTIBLE TO WAIVER UNDER RULE 1.7**

27. The representation of Mr. Cook as a witness with respect to the Motion for Sanctions by Mr. Gallagher or any other attorney employed by Upright Law appears to violate ABA Model Rule 1.7[6] which states, in relevant part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: […] (2) there is a significant risk that the representation of one or more clients will be materially limited… by a personal interest of the lawyer.

ABA Model Rule 1.7.[7]

28. The legal services provided to Mr. Cook in his bankruptcy case were substantially deficient. His sworn schedules and SOFA prepared by Mr. Gallagher were replete with information that Mr. Gallagher knew, or should have known, was false. At the 341 Meeting, Mr. Gallagher's then-colleague, Ms. Wood, made a representation of fact to the Chapter 7 Trustee that was not

---

[6] Local Bankruptcy Rule 9029-4A provides that, except as modified by Local Bankruptcy Rule 2090-5, the rules of professional conduct adopted by the United States District Court for the Northern District of Illinois, are applicable in proceedings before this Court. Through Local Rule 83.50, the District Court has adopted the ABA Model Rules. In the event of inconsistency between the ABA Model Rules and the Illinois Rules of Professional Conduct, the latter apply if the attorney is admitted to practice in Illinois. (*See* Local Rule 83.50.)

[7] If an attorney *reasonably believes* that he or she will be able to provide competent and diligent representation to each affected client, and certain other conditions are met, a concurrent conflict can be waived by an affected client under Rule 1.7(b). The U.S. Trustee submits that the conflicts in this case are of a character that they are not susceptible to waiver.

accurate, and Mr. Cook adopted the statement. While the bankruptcy case was pending, Mr. Levin, an employee of Upright Law settled a lawsuit that belonged to the estate without any authority to do so. None of these activities are consistent with Mr. Cook's obvious interests at the outset of his bankruptcy case, which were to properly file the case, obtain a discharge, and get a fresh start. None of these occurrences have been timely remedied.[8] The acts and omissions of Mr. Gallagher and Upright Law in Mr. Cook's bankruptcy case are the focus of the Motion for Sanctions.

29.     If Mr. Gallagher's deposition testimony is accepted at face value, it can only be concluded that he has stayed intentionally ignorant of the circumstances surrounding his client's – Mr. Cook's – bankruptcy filing. Mr. Gallagher has known about *Cook v. Praxis* and *Cook v. Rushmore* for at least 9 months – yet he has not conducted even the most basic inquiry into these cases to ascertain what information is omitted from Mr. Cook's bankruptcy disclosures. Nine months after the Motion for Sanctions was filed, Mr. Gallagher is unable to even identify what the "FDCPA Settlement" is that is disclosed on the amended Schedule B that he prepared.

30.     It is, presumably, rare for an attorney to attempt to represent a witness or other party in a proceeding to which the attorney himself or herself is a party, particularly when the proceeding *focuses on the attorney's conduct*. Several reported decisions involving such circumstances have found disqualification necessary on their particular facts. *See Jamieson v. Slater*, 2006 WL 3421788 (D. Ariz. Nov. 27, 2006); *In re Marriage of Wixom & Wixom*, 182 Wash. App. 881, 332 P.3d 1063 (2014), *review denied sub nom.*, 353 P.3d 632 (Wash. 2015); *see also, In re Bruzga's Case*, 162 N.H. 52, 27 A.3d 804 (New Hampshire 2011) (finding violation of New Hampshire Rule 1.7 where attorney represented client during Medicaid Fraud that focused on both attorney and client). Respondents' counsel provided the U.S. Trustee with a copy of ABA Formal Opinion

---

[8] On March 20, 2018, Respondents announced that they were turning over the fees collected in *Cook v. Praxis* to the Chapter 7 Trustee. This refund was made in an attempt to push their request that the U.S. Trustee file an adversary proceeding and dismiss the Motion for Sanctions.

94-384 in support of his contention that it is proper for Mr. Gallagher to represent Mr. Cook; however, that opinion deals with a different situation than the one that exists here.[9] It in no way endorses the notion that it is appropriate for an attorney to represent a witness in a proceeding *against the attorney*, and, not surprisingly, its analysis would indicate just the opposite.

31. Mr. Gallagher and Upright Law cannot reasonably believe that they are able to provide competent and diligent representation to Mr. Cook at this juncture. To provide competent and diligent representation, Mr. Gallagher and his colleagues would have to counsel Mr. Cook regarding: (1) the Motion for Sanctions pending *against them*, for misconduct affecting *him*; (2) the implications of his sworn disclosures which contain inaccurate information; and (3) any rights he may have against them as a result of their actions in his case. Objective advice with respect to any of the foregoing would most likely be contrary to Mr. Gallagher's and Upright Law's personal interests in limiting their pecuniary and professional exposure for their conduct. As noted in Comment 10 to Rule 1.7, "[I]f the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." There has been no sign that Mr. Gallagher or Upright Law can render detached advice to Mr. Cook here. To the contrary, all signs indicate that they cannot. There have been no amendments made to correct Mr. Cook's representations in his Schedules and SOFA. Indeed, Mr. Gallagher's deposition testimony betrays a near complete ignorance of the case.

32. A majority of authorities adhere to a general rule that only a client or former client has standing to seek disqualification based on a conflict of interest, and many of these authorities cite *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. Fla. 1976). The *Yarn Processing* decision acknowledges the possibility of "narrow exceptions" to the general rule to permit non-client standing where the conflict is "manifest and glaring" or "open and obvious."

---

[9] A copy of ABA Formal Opinion 94-384 is attached as <u>Exhibit F</u>.

14

*Id.*, at 89. The U.S. Trustee submits that even in the absence of 11 U.S.C. § 307,[10] non-client standing would exist under the rather exceptional circumstances of this case. To proceed with a deposition and discovery of Mr. Cook while he is represented by Mr. Gallagher or another Upright Law attorney would likely compound the issues in this case, placing Mr. Cook in a terrible position. The U.S. Trustee does not desire to participate in such an exercise. Nor should the U.S. Trustee have to forego discovery from this important fact witness. Through their maneuvering, Mr. Gallagher and Upright Law have attempted to place the U.S. Trustee in a box with respect to Mr. Cook. In the process, they have demonstrated their complete inability to represent Mr. Cook with undivided loyalty.

WHEREFORE, the U.S. Trustee requests the Court enter an order (I) requiring David Gallagher and Upright Law to disgorge all sums collected in this case to Charles Cook, (II) cancelling the retention agreement between Charles Cook and Upright Law to the extent not already voided by 11 U.S.C. §§ 528(a) and 526(c)(1), (III) disqualifying David Gallagher and all other attorneys employed by Upright Law from representing Charles Cook as a witness with respect to the Motion for Sanctions, and (IV) awarding any other and further relief as is just.

RESPECTFULLY SUBMITTED,

PATRICK S. LAYNG
UNITED STATES TRUSTEE

Dated: March 21, 2018

/s/ Jeffrey S. Snell
Jeffrey S. Snell, Trial Attorney
Ha M. Nguyen, Trial Attorney
United States Department of Justice
Office of the United States Trustee
219 South Dearborn Street, Room 873
Chicago, Illinois 60604
Direct: (312) 886-0890
Email: Jeffrey.Snell@usdoj.gov

---

[10] Section 307 provides that "[t]he United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title."